**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

DANIELLE RUIZ, CIELO JEAN GIBSON, JENNIFER ZHARINOVA, SARA UNDERWOOD, TIFFANY TOTH, CARISSA ROSARIO, and SANDRA VALENICA,

　　　　　　　　Plaintiffs,

　　　- against -

LA PLACE, INC., d/b/a GOSSIP GENTLEMAN'S CLUB, and NICKOLAS ALLEVA,

　　　　　　　　Defendants.

Case No. _____

**COMPLAINT**

(Jury Trial Demanded)

　　　　Plaintiffs DANIELLE RUIZ, CIELO JEAN GIBSON, JENNIFER ZHARINOVA, SARA UNDERWOOD, TIFFANY TOTH, CARISSA ROSARIO, and SANDRA VALENICA, (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against defendants LA PLACE, INC., d/b/a GOSSIP GENTLEMAN'S CLUB, and NICKOLAS ALLEVA, (collectively, "Defendants"), respectfully allege as follows:

## BACKGROUND

　　　　1.　　This is an action for damages and injunctive relief relating to Defendants' theft, alteration, and unauthorized publication of sexually suggestive images of Plaintiffs, each of whom are world renowned professional models, in order to promote their strip club, Gossip Gentleman's Club ("Gossip" or, the "Club").

　　　　2.　　As detailed below, Defendants theft and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of New York Civil Rights Law §§ 50-51, which

protects a person's right to privacy and publicity; c) violation of New York's Deceptive Trade Practices Act (New York G.B.L. §349) which prohibits deceptive business practices; d) defamation, and; e) various common law torts.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any of the Clubs, via any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) insofar as there is complete diversity of the parties to this action, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).   This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.  No Plaintiff resides in New York.

6.      According to publicly available records, Defendants are a New York corporation and the principal thereof.

7.      Venue is proper in the United States District Court for the Eastern District of New York because Suffolk County is the principal place of business for Defendants.

8.      All parties have minimum contacts with Suffolk County, a significant portion of the alleged causes of action arose and accrued in Suffolk County, New York, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Suffolk County.

## PARTIES

*Plaintiffs*

9.     Plaintiff Danielle Ruiz ("Ruiz") is a well known professional model and a resident of Los Angeles County, California.

10.     Plaintiff Cielo Jean ("CJ") Gibson ("Gibson"), is a well known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Sara Underwood ("Underwood") is a well known professional model, and a resident of Columbia County, Oregon.

12.     Plaintiff Tiffany Toth ("Toth") is a well known professional model, and a resident of Orange County, California.

13.     Plaintiff Carissa Rosario ("Rosario") is a well known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Sandra Valencia ("Valencia") is a well known professional model, and a resident of Los Angeles County, California.

15.     Plaintiff Jennifer Zharinova ("Zharinova") is a well known professional model, and a resident of Los Angeles County, California.

*Defendants*

16.     According to publicly available records, defendant La Place, Inc. ("La Place") is a corporation organized under the laws of the State of New York, and has a principle place of business at 602 Broadhollow Road, Melville, New York 11747.  La Place operates Gossip, located at 602 Broadhollow Road, Melville, New York 11747.

17.     Upon information and belief, defendant Nickolas Alleva ("Alleva") is a resident of the State of New York.  Alleva is identified by the New York State Liquor Authority as the

- 3 -

principal of La Place.  Upon information and belief, Alleva, in his capacity as principal of La Place, maintains operational control over Gossip, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

18.     As set forth immediately below, each Plaintiff is an extremely well known professional model who earns her livelihood modeling and selling her Images to companies, magazines and individuals for the purpose of advertising products and services.

19.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

20.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at or endorsed Gossip.

21.     In the case of each and every Plaintiff, such appearance was false.

22.     Moreover, in each and every case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

*Plaintiffs' Backgrounds and Careers*

23.     Ruiz is a veteran of the entertainment industry and an extremely accomplished, established, and highly sought after model, host, and actor.  She shot to fame by winning Miss Hawaiian Tropic Brazil and has modeled for Foreplay Lingerie, Elegant Moments, Escante Lingerie, Hustler Apparel, Body Zone Apparel, and Ziggy NY Shoes.  Ruiz has also served as a

contract model for Fredericks of Hollywood, L*Space, and has been Rockstar Energy's Miss Motorcross and a Monster Energy Dime Squad Girl. She has appeared in many magazines, and graced the covers of *Maxim* and *Elegant*. Ms. Ruiz's credits as an actress are equally impressive, with appearances on *The New Girl*, *The Finder*, *Breaking In*, *Cougar Town, CSI, Entourage*, *The Jonas Brothers*, *Miami Trauma*, *Dark Blue, Love Bites*, *Friends with Benefits, Battle LA*, *The Ex's* and, as a host, the television series *WPT Royal Flush*. She has over 126,500 followers on Instagram and 14,000 on Twitter.

24. That we know of, Ruiz is depicted in the photos in Exhibit "A" to promote Gossip on its website and Facebook page. These Images depict Ruiz in a sexually suggestive outfit and were intentionally altered to make it appear that Ruiz was either a stripper working at Gossip, or she endorsed the Club. This false appearance is bolstered by the copy accompanying the Images which reads: "Every Friday Our Girls Play Dress Up … Only to Take it Off."

25. Ruiz has never been employed at Gossip, has never been hired to endorse Gossip, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

26. Gibson is an extremely successful model who got her start in the industry when she won the *Import Turner* magazine Model Search. Gibson has a massive motor sport following, and is currently the model for the Falken Drift Team and SBT, Inc. (Short Block Technologies), as well as being a Top Rank Boxing model. Gibson has been seen in the pages of *FHM*, *American Curves* (cover), *Supreme, MuscleMag International* and *Muscle & Fitness*, and has over 48,000 Instagram followers.[1]

27. That we know of, Gibson is depicted in the photos in Exhibit "B", which were

---

[1] In the modeling industry, the number of online followers a model has is a strong indication of her popularity and, thus, earning potential.

published on the Gossip website, Facebook, Twitter and Instagram pages. These images depict Gibson in a sexually suggestive school uniform to promote the "Summer School" party at Gossip, and were intentionally altered to make it appear that Gibson was either a stripper working at Gossip, or that she endorsed the Club.

28.     Gibson has never been employed at Gossip, has never been hired to endorse Gossip, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.     Zharinova is a highly successful model and actress, who has modeled for Aveda and Target, to name a few.   Zharinova has done Runway, Print, Commercial, and Theatrical jobs for Great Clips, Chevy Malibu, 24 Hour Fitness, Caesar's Palace, Sprint, Levi's, Guess and many more.

30.     That we know of, Zharinova is depicted in the photos in Exhibit "C", which were published on the Gossip website, Facebook, Twitter and Instagram pages. These images depict Zharinova in a sexually suggestive school uniform to promote the "Summer School" party at Gossip, and were intentionally altered to make it appear that Zharinova was either a stripper working at Gossip, or that she endorsed the Club.

31.     Zharinova has never been employed at Gossip, has never been hired to endorse Gossip, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.     Rosario is an internationally known model who has appeared in *Maxim*, *FHM*, *GQ* and *Vogue*. Rosario has also done has done commercials for Budweiser and Comcast, and is a spokesperson for Monster Energy Drinks, Protein World, and Budweiser. Rosario also has her own perfume line, and is extraordinarily well known in the Social Media world, with over

710,000 Facebook followers, 360,000 Instagram followers, and 122,000 Twitter followers.

33.     That we know of, Rosario is depicted in the photos in Exhibit "D" which were published on the Gossip website, Facebook, Twitter and Instagram pages.  This Image shows Rosario in a sexually suggestive military uniform, in order to promote the Gossip "Military Night", and was intentionally altered in order to make it appear that Rosario was either a stripper working at Gossip or that she endorsed the Club.   This appearance is bolstered by copy accompanying the Image, which reads:  "Every Friday Our Models Play Dress Up … Just to Take it Off."

34.     Rosario has never been employed at Gossip, has never been hired to endorse Gossip, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.     Toth is an extremely successful model who was the September 2011 *Playboy* Playmate of the Month. Toth has also appeared in a variety of magazines including *Super Street Bike, Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, as well as appearing in countless other catalogs and publications.   Toth's popularity and renown is evidence by the fact that she has over 2 million Facebook followers, over 300,000 Instagram followers, and over 100,000 Twitter followers. In addition to her Toth's modeling work, she owns and maintains her own e-commerce site.

36.     That we know of, Toth is depicted in the photos in Exhibit "E" which were published on the Gossip website, Facebook, Twitter and Instagram pages.  This Image shows Toth in a sexually suggestive military uniform, in order to promote the Gossip "Military Night", and was intentionally altered in order to make it appear that Toth was either a stripper working at Gossip or that she endorsed the Club.  This appearance is bolstered by copy accompanying the

Image, which reads: "Every Friday Our Models Play Dress Up … Just to Take it Off."

37.    Toth has never been employed at Gossip, has never been hired to endorse Gossip, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.    Valencia is a Colombian-born model with a large international following who has worked throughout Latin America and the United States.  Valencia has modeled for clients such as Diesel, Americanino, Leonisa, Chevignon, Onde de Mar and many more.  Valencia recently became the contract face of BESAME lingerie, and continues to be one of the most popular and successful Colombian models with a growing social media profile, and over 53,000 Instagram followers.

39.    That we know of, Valenica is depicted in the photos in Exhibit "F" which were published on the Gossip website, Facebook, and Twitter accounts to promote the "Corporate Happy Hour" at Gossip. This Image depicts Valencia in a sexually suggestive outfit and was intentionally altered to make it appear that Valencia was a stripper working at Gossip, or endorsed the Club, a false appearance bolstered by the accompanying copy, which reads: "Suits…Flutes…Steaks…Stogies…And Of Course Our Beautiful Models."

40.    Valencia has never been employed at Gossip, has never been hired to endorse Gossip, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.    Underwood is a world famous model whom first appeared on the cover of *Playboy* in October 2005, was *Playboy*'s Playmate of the Month for July 2006, and was named *Playboy's* Playmate of the Year for 2007.   Underwood has not only been featured in various *Playboy* videos, but has likewise appeared, as herself, in the major motion pictures *The House*

*Bunny* and *Miss March*.  She has also appeared on episodes of such reality TV series as *Kendra*, *The Girls Next Door*, and *Bridget's Sexiest Beaches*.  Underwood also works regularly in television as a continuity announcer for the Blackbelt TV cable network, and has served as co-host of G4's *Attack of the Show*.  Underwood has more than 950,000 Instagram followers, over 465,000 Twitter followers, and nearly 1.4 million followers on Facebook.

42.     That we know of, Underwood is depicted in the photos in Exhibit "G" in order to promote Gossip.  This Image depicts Underwood in a sexually suggestive cowboy outfit, which was intentionally altered to make it appear that Underwood was either a stripper working at Gossip, or endorsed same.

43.     Underwood has never been employed at Gossip, has never been hired to endorse Gossip, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

### Defendants' Business

44.     Upon information and belief, La Place Enterprises operates Gossip, where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

45.     Upon information and belief, and in furtherance of its promotion of Gossip, La Place owns, operates and controls the Gossip website, located at www.gossipclubny.com (hereinafter, the "Gossip Website").   In addition, and upon information and belief, La Place owns, operates, and controls the Gossip Facebook, Twitter, and Instagram accounts.

46.     La Place uses the Gossip Website, and the Gossip Facebook, Twitter, and Instagram accounts, to promote Gossip, and to attract patrons thereto.

47.     La Place does this for its own commercial and financial benefit.

48.     La Place has used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as a strippers at Gossip or endorsed Gossip.

49.     La Place used Plaintiffs' Images, and created the false impression that they worked at or endorsed Gossip in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

50.     As La Place was at all times aware, at no point has any of the above named Plaintiffs ever been affiliated with or employed by Gossip, and at no point have any of the Plaintiffs ever endorsed Gossip.

51.     All of La Place's activities, including its theft of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and La Place did not compensate Plaintiffs for its use of their Images.

52.     As such, Plaintiffs have never received any benefit for La Place's use of their Images.

***Standard Business Practices in the Modeling Industry***

53.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

54.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the

images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendant's Theft of Plaintiff's Images***

55.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs privacy by using Plaintiffs Images for commercial purposes in order to promote Gossip, by and through various marketing and promotional mediums including, without limitation, the Gossip Website, and the Gossip Twitter, Facebook, and Instagram accounts.

56.     Defendants showcased Plaintiffs' Images on the Gossip Website in order to create the false impression that Plaintiffs worked at Gossip, or endorsed same.

57.     Defendants did so in order to attract clientele to Gossip, promote Gossip, and thereby generate revenue for Defendants.

58.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Gossip.

59.     Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.  This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are each strippers.

60.     At no point were any of the Plaintiffs ever affiliated with Gossip, or Defendants.

61.     Each of Plaintiffs' Images was used without her consent.

62.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

63.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

64.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including the Gossip Website, or the Gossip Twitter, Facebook, or Instagram accounts.

65.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

66.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.:**
**False Endorsement)**

67.      Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

68.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

69.     Defendants used Plaintiffs Images in order, *inter alia*, in order to create the false impression with the public that Plaintiffs either worked at Gossip, or endorsed same.

70.     This was done to promote and attract clientele to Gossip, and thereby generate revenue for the Defendants.

71.     Thus, this was done in furtherance of Defendants' commercial benefit.

72.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither

worked at, nor endorsed, Gossip, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Gossip.

73.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Gossip.

74.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of Gossip, and the goods and services provided by Gossip.

75.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of N.Y. Civ. Rights Law §§ 50-51)

76.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

77.     As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on the Gossip Website and/or related social media accounts altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at Gossip, or endorsed same.

78.     At all relevant times, the Gossip Website and social media accounts were used and operated by Defendants for advertising and trade purposes.

79.     The Gossip Website and social media accounts were designed to attract business to Gossip and generate revenue for Defendants.

80.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact

attract clientele and generate business for Gossip.

81.     At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on the Gossip Website or on any social media account.

82.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Gossip.

83.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

84.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

85.     Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

86.     In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

87.     In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

### THIRD CAUSE OF ACTION
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act)

88.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth herein.

89.     Defendants operated the Gossip Website and social media accounts in order to promote Gossip, to attract clientele thereto, and to thereby generate revenue for Defendants.  As such, Defendants' operation of the websites and social media accounts, and their publication of Images thereon, were consumer-oriented in nature.

90.     Defendants published Plaintiffs' Images on the Gossip Website and social media accounts in order to create the false impression that Plaintiffs were either strippers working at Gossip, or endorsed same.

91.     As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Gossip.

92.     As Defendants were at all times aware, Plaintiffs never worked at any of the Gossip, never endorsed Gossip, and never had any affiliation with Gossip.

93.     Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at Gossip, or endorsed Gossip.

94.     As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on the Gossip Website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

95.     As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have  been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
### (Defamation)

96.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

97.     As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote Gossip to the general public and potential clientele.

98.     Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed at Gossip, endorsed Gossip, or that they had some affiliation with Gossip.

99.     None of these representations were true.

100.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at Gossip, or endorsed same.

101.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by Gossip, had no affiliation with Gossip, had not consented to the use of their Images, and had not been compensated for the use of their Images.

102.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by Gossip, had no affiliation with Gossip, had not consented to the use of their Images, and had not been compensated for the use of their Images.

103.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

104.    Defendants' publication of Plaintiffs' Images constitutes defamation under New

York law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

105.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

106.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

107.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

108.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

### FIFTH CAUSE OF ACTION
**(Negligence and *Respondeat Superior*)**

109.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

110.    Upon information and belief, Defendants were negligent in their failure to promulgate policies and procedures concerning the misappropriation of the Images of models

- 17 -

that were used on the Gossip Website and social media accounts.

111.    Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

112.    In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of Images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and New York law, were not violated.

113.    In addition, Defendants had a duty to refrain from appropriating the Images of those with whom it had not contracted, and had not paid.

114.    Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

115.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

<u>**SIXTH CAUSE OF ACTION**</u>
**(Conversion)**

116.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

117.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests therein.

118.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

119.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and

publication of same, Plaintiffs have suffered damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

**SEVENTH CAUSE OF ACTION**
**(Unjust Enrichment)**

120.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

121.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

122.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at Gossip, or endorsed same.

123.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

124.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

125.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to Gossip.

126.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

127.    As such, Plaintiffs have been damaged in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

## EIGHTH CAUSE OF ACTION
### (Quantum Meruit)

128.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

129.    Plaintiffs are each world famous models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

130.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

131.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, or endorse their Club, Defendants have not compensated Plaintiffs.

132.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

133.    Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), relating to Plaintiffs' first through eighth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Clubs;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      December 14, 2015

**THE CASAS LAW FIRM, P.C.**

By: /s/ John V. Golaszewski
    John V. Golaszewski, Esq.
    1745 Broadway, 17th Floor
    New York, New York
    T: 855.267.4457
    F: 855.220.9626

    *Attorneys for Plaintiffs*